## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005,<br><br>and<br><br>DEMOCRACY FORWARD FOUNDATION<br>1333 H Street NW, 11th Floor<br>Washington, DC 20005,<br><br>       *Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br>2201 C Street NW<br>Washington, DC 20520,<br><br>MICHAEL R. POMPEO, in his official capacity<br>as U.S. Secretary of State,<br>2201 C Street NW<br>Washington, DC 20520,<br><br>NATIONAL ARCHIVES AND RECORDS<br>ADMINISTRATION<br>700 Pennsylvania Avenue NW<br>Washington, DC 20408,<br><br>and<br><br>DAVID FERRIERO, in his official capacity as<br>Archivist of the United States,<br>700 Pennsylvania Avenue NW<br>Washington, DC 20408,<br><br>       *Defendants*. | Case No.: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  Plaintiffs American Oversight and Democracy Forward Foundation ("Democracy

Forward") hereby bring this action against Defendants the United States Department of State

("State Department" or the "Department"), Michael R. Pompeo, in his official capacity as Secretary of State, the National Archives and Records Administration ("NARA"), and David Ferriero, in his official capacity as Archivist of the United States, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, and the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101, *et seq.* and 44 U.S.C. §§ 3301, *et seq.*

2.      This action challenges the failure of Defendants to carry out their nondiscretionary duties under the FRA to recover State Department records created to document in-person meetings between President Donald J. Trump and Russian Federation President Vladimir Putin, which were unlawfully removed from the Department.

3.      When the President of the United States meets with a foreign leader, it is important to have a permanent, contemporaneous written record of that meeting. Presidents and Secretaries of State throughout American history have understood this and have diligently documented these interactions. In the near term, this facilitates the diplomatic mission of the United States by ensuring that negotiating positions and promises are catalogued and allows for key staff not in the room to be accurately briefed. And in the longer term, it preserves for posterity an accurate record of America's history.

4.      Where these records are created or possessed by an agency subject to the FRA, like the State Department, the obligation to ensure they are preserved and maintained—and if necessary recovered—falls jointly to Defendants. In this case, Defendants have failed, individually and collectively, to carry out their nondiscretionary obligations under the FRA and, in failing to do so, have violated the APA.

## PARTIES

5.      Plaintiff American Oversight is a nonpartisan non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. It is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and requests made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records preserved pursuant to the FRA, American Oversight uses the information it gathers, and its analysis of it, to educate the public about the activities and operations of the federal government—including those of Defendants—through reports, published analyses, press releases and other media. As part of this work, American Oversight has submitted FOIA requests to both the State Department and NARA, and it will continue to seek records from each agency in the future. Indeed, American Oversight submitted separate requests to the State Department on January 17, 2019, and January 25, 2019, seeking non-exempt federal records relating to President Trump's one-on-one meetings with President Putin. Unlawful alienation of records responsive to those requests thwarts American Oversight's organizational mission and interferes with its rights under the FOIA. As of the filing of this Complaint, the Department has not produced any records pursuant to American Oversight's requests.

6.      Plaintiff Democracy Forward Foundation is a nonpartisan non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. Democracy Forward works to promote transparency and accountability in government, in part, by educating the public on government actions and policies, including those taken by Defendants. As part of this work, Democracy Forward regularly uses the FOIA to make requests for records preserved pursuant to the FRA from federal

agencies, including the State Department and NARA, and it will continue to seek records from each agency in the future. Indeed, Democracy Forward submitted a FOIA request on January 30, 2019 to the State Department seeking non-exempt federal records relating to President Trump's one-on-one meetings with President Putin. Unlawful alienation of records responsive to that request thwarts Democracy Forward's mission and interferes with its rights under the FOIA. As of the filing of this Complaint, the Department has not produced any records pursuant to Democracy Forward's request.[1]

7.      Defendant U.S. Department of State is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and APA, 5 U.S.C. § 551(1), and is headquartered in Washington, D.C.

8.      Defendant Michael R. Pompeo is sued in his official capacity as the Secretary of State. As Secretary of State, he is the agency head charged with carrying out and performing certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106.

9.      Defendant NARA is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and APA, 5 U.S.C. § 551(1), and is headquartered in Washington, D.C.

10.     Defendant David S. Ferriero is sued in his official capacity as the Archivist of the United States and the agency head charged with overseeing the operations of NARA. In his capacity as the Archivist of the United States, he is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106.

---

[1] Plaintiffs note relevant FOIA requests they have submitted on the same subject matter as this suit to demonstrate the manner in which their work is harmed by the violations of the FRA described in this Complaint. This Complaint does not assert a claim under the FOIA.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701, *et*

*seq.*, the FRA, 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201

and 2202.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## LEGAL FRAMEWORK

13.     The FRA governs the creation, management, and disposal by agencies of

"records." *See generally* 44 U.S.C. Chapters 21, 29, 31 and 33.

14.     "Records" are defined as

> all recorded information, regardless of form or characteristics, made or received by a
> Federal agency under Federal law or in connection with the transaction of public business
> and preserved or appropriate for preservation by that agency or its legitimate successor as
> evidence of the organization, functions, policies, decisions, procedures, operations, or
> other activities of the United States Government or because of the informational value of
> data in them[.]

*Id.* § 3301(a)(1)(A).

15.     The FRA imposes mandatory duties on both the Secretary of State and the

Archivist, providing that each "shall make and preserve records containing adequate and proper

documentation of the organization, functions, policies, decisions, procedures, … and designed to

furnish the information necessary to protect the legal and financial rights of the Government and

of persons directly affected by the agency's activities." *Id.* § 3101.

16.     The head of each agency is further required to establish a records management

program providing "effective controls over the creation and over the maintenance and use of

records," *id.* § 3102(1), and to "establish safeguards against the removal or loss of records the

head of [the] agency determines to be necessary and required by regulations of the Archivist," *id.*
§ 3105.

17.     Where records are handled in a manner that contravenes the FRA, such as through
improper removal or destruction, the FRA obligates the relevant agency head to "notify the
Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration,
corruption, deletion, erasure, or other destruction of records in the custody of the agency[.]" *Id.*
§ 3106(a).

18.     Along with the Archivist, the agency head "shall initiate action through the
Attorney General for the recovery of records the head of the Federal agency knows or has reason
to believe have been unlawfully removed from that agency, or from another Federal agency
whose records have been transferred to the legal custody of that Federal agency." *Id.*

19.     In order to guard against cases where agency heads do not diligently pursue
recovery of agency records by initiating a recovery action through the Attorney General "within
a reasonable period of time after being notified of any such unlawful action," the Act separately
provides that "the Archivist shall request the Attorney General to initiate such an action, and
shall notify the Congress when such a request has been made." *Id.* § 3106(b). The FRA also
obligates the Archivist to independently refer the matter to the Attorney General where there is
reason to believe that the agency head has participated in the FRA violation. *Id.*

20.     Where both the agency head and the Archivist have "failed to initiate remedial
action in a timely [manner], 'private litigants may sue under the APA to require them to do so.'"
*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d
101, 110 (D.D.C. 2007).

## FACTS

21.     Since his inauguration, President Donald Trump has met in-person with Russian

Federation President Vladimir Putin on at least five occasions:

a.      Meeting during the "Group of Twenty" summit ("G20 Summit"), Hamburg,
Germany, July 7, 2017;

b.      Private conversation over dinner during G20 Summit, Hamburg, Germany, July 7,
2017;

c.      Conversation during Asia-Pacific Economic Cooperation Summit, Da Nang,
Vietnam, November 11, 2017;

d.      Two-hour private meeting, Helsinki, Finland, July 16, 2018; and

e.      Conversation at G20 Summit, Buenos Aires, Argentina, December 1, 2018.

22.     The President is likely to meet with President Putin once again at the forthcoming

G20 Summit, which will be held in Osaka, Japan from June 28, 2019 to June 29, 2019.

23.     President Trump has taken unusual, and in some cases extreme, measures to

conceal the details of these meetings, not only from the public at large, but also from key

members of his Administration, including officials at the State Department. *See* Greg Miller,

*Trump Has Concealed Details of His Face-to-Face Encounters With Putin From Senior Officials*

*in Administration*, Wash. Post, Jan. 13, 2019, https://www.washingtonpost.com/world/national-

security/trump-has-concealed-details-of-his-face-to-face-encounters-with-putin-from-senior-

officials-in-administration/2019/01/12/65f6686c-1434-11e9-b6ad-

9cfd62dbb0a8_story.html?utm_term=.bb7df3113f43; *see also* Peter Baker, *Trump and Putin*

*Have Met Five Times. What Was Said Is a Mystery.*, N.Y. Times, Jan. 15, 2019,

https://www.nytimes.com/2019/01/15/us/politics/trump-putin-meetings.html.

24.     These practices have resulted in the total absence of a "detailed record, even in classified files, of Trump's face-to-face interactions with the Russian leader at five locations over the past two years." Miller, *supra* ¶ 23.

25.     On at least one occasion, following a meeting between the two leaders on July 7, 2017 at the G20 Summit in Hamburg, Germany, President Trump took possession of written notes documenting the meeting ("Hamburg Meeting Records") from the State Department official who created them, and further instructed that same official to not discuss the contents of the meeting with other members of the Administration. *Id.*

26.     Pursuant to the FRA, the State Department requires that all documentary materials that provide informational value or "constitute evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government" must be maintained and preserved pursuant to an agency preservation schedule approved by NARA. U.S. Dep't of State, 5 Foreign Affairs Handbook 4 H-113, https://fam.state.gov/fam/05fah04/05fah040110.html#H113; *see generally* U.S. Dep't of State, 5 Foreign Affairs Manual 415.3, https://fam.state.gov/fam/05fam/05fam0410.html#M415_3.

27.     The official agency functions of the State Department's Office of Language Services include "[a]rrangements for any Department or Foreign Service personnel … to serve as official interpreters for visits or high-level meetings." U.S. Dep't of State, 6 Foreign Affairs Manual 1531(a), https://fam.state.gov/FAM/06FAM/06FAM1530.html. In carrying out these official duties, the Office of Language Services "may assign interpreters from its own staff or roster of private contractors or arrange for the detail of qualified Foreign Service or Department officers, or officers from other agencies." *Id.* at 1531(b). In any such case, the Office of

Language Services "ascertains that assigned officers or contractors possess the necessary qualifications and interpreting aptitude." *Id.*

28.     On information and belief, the official who created the records documenting the Hamburg Meeting Records was an employee of the State Department's Office of Language Services serving in his or her official capacity as an Office of Language Services employee.

29.     The absence of records documenting this meeting became apparent when officials from both the White House and State Department sought information about the substance of the meeting. *See* Miller, *supra* ¶ 23.

30.     Then-Secretary of State Rex Tillerson was reportedly present at the July 7, 2017 meeting in which the seized records were created, *id.*, and so would have had direct knowledge of the events giving rise to the FRA violation and, as the head of the State Department, has a nondiscretionary obligation under the FRA to seek to recover those improperly alienated records.

31.     On January 24, 2019, Plaintiff American Oversight sent a letter to Secretary Pompeo ("American Oversight Letter"), copying Mr. Ferriero, alerting Defendants to the fact that President Trump's "reported removal of a State Department interpreter's notes may violate the Federal Records Act's prohibition on unlawful removal or destruction of federal records." *See* American Oversight Letter at 1 (citing 44 U.S.C. § 3106) (attached as Ex. A).

32.     The American Oversight Letter notified Defendants of the FRA violations described in this Complaint and requested that Secretary Pompeo "notify the Archivist of 'any actual, impending, or threatened' unlawful removal, alteration, or destruction of federal records, and … initiate action to recover those records you have reason to believe were unlawfully removed." American Oversight Letter at 2 (quoting 44 U.S.C. § 3106(a)).

33.     On February 7, 2019, Plaintiff Democracy Forward sent a letter ("Democracy Forward Letter") notifying Secretary Pompeo and Mr. Ferriero of the FRA violations identified in this Complaint and requesting that Defendants take the following actions:

a.      Notify the Archivist of any and all instances where Meeting notes memorializing meetings between President Trump and President Putin were seized or destroyed;

b.      Retrieve from the President's custody any and all Meeting Notes and ensure their preservation pursuant to State's obligations under the FRA;

c.      Refer the President's unlawful seizure of the Meeting Notes to the Attorney General for the purpose of initiating an enforcement action to recover the records and seek other appropriate redress; and

d.      Undertake a review of the Department's records management policy, identify any shortcomings that permitted the FRA violations, identified above, to occur, and make any necessary revisions.

*See* Democracy Forward Letter at 4 (attached as Ex. B).

34.     Democracy Forward further reminded Mr. Ferriero of his nondiscretionary duty under the FRA to independently initiate an enforcement action through the Attorney General to recover alienated federal records, like the Hamburg Meeting Records.

35.     As of the filing of this Complaint, Plaintiffs have not received a response of any kind from Defendants to either the American Oversight Letter or to the Democracy Forward Letter.

36.     Moreover, on information and belief, both Defendants State Department and Secretary Pompeo have failed to take any action to recover and preserve the records documenting President Trump's in-person meetings with President Putin, including the Hamburg Meeting Records, to address deficiencies in the Department's records management policies that permitted the FRA violations to occur in the first instance, or to initiate an enforcement and recovery action through the Attorney General in a timely manner.

37.     On information and belief, Defendants NARA and Mr. Ferriero have also failed to initiate an enforcement action through the Attorney General for the recovery of unlawfully alienated State Department records, including the Hamburg Meeting Records.

38.     Plaintiffs are being irreparably harmed by Defendants' failure to take any action to recover unlawfully alienated State Department meeting notes, like the Hamburg Meeting Records. As stated above, Plaintiffs routinely submit requests for federal records to the Department under the FOIA, and indeed have FOIA requests pending before the Department relating to President Trump's one-on-one meetings with President Putin. Their ability to use the FOIA to gather agency records, analyze those records, and educate the public about government activities is impeded where, as here, the agency head has failed to carry out its nondiscretionary duties under the FRA.

39.     Plaintiffs will continue to be irreparably harmed unless and until Defendants State Department and Secretary Pompeo provide notice of the unlawfully alienated meeting records to the Archivist and jointly initiate an enforcement and recovery action for the records through the Attorney General.

40.     Plaintiffs will also continue to be irreparably harmed unless and until Defendants NARA and Ferriero initiate an enforcement action through the Attorney General for the recovery of unlawfully alienated meeting records, including the Hamburg Meeting Records.

**CLAIM FOR RELIEF**

**Count One (Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* for declaratory and injunctive relief)**

41.     Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

11

42.     Meeting notes, like the Hamburg Meeting Records, which are created by State Department employees—such as an interpreter from the Office of Language Services—that catalogue important and contemporaneous details of government affairs qualify as federal records subject to the FRA because they were created "in connection with the transaction of public business and … [are] appropriate for preservation by that agency … as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States government[.]" *See* 44 U.S.C. § 3101(a)(1)(A).

43.     Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301-3314 (setting forth the steps for lawfully disposing of records).

44.     The *ad hoc* decision by the President of the United States to seize, and possibly destroy, Department records, including the Hamburg Meeting Records, violates the FRA and State Department regulations governing maintenance and preservation of federal records.

45.     Where, as here, this violation is known to the Department, the Secretary of State has a nondiscretionary duty under the FRA to report the violation to the Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

46.     Defendants State Department and Secretary Pompeo have failed to perform their mandatory duty to recover the unlawfully removed State Department records.

47.     Defendants State Department and Secretary Pompeo have failed to perform their mandatory duty to notify the Archivist of the above-described known FRA violations.

48.     Defendants State Department and Secretary Pompeo have failed to perform their mandatory duty to initiate an action through the Attorney General to recover the unlawfully removed records.

49.     These failures to act constitute final agency action for which there is no other adequate remedy in a court of law. Moreover, they amount to agency action unlawfully withheld or unreasonably delayed, and are also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

### Count Two (Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* for declaratory and injunctive relief)

50.     Defendants NARA and Ferriero have an independent nondiscretionary duty under the FRA to initiate a recovery action through the Attorney General when the agency head fails to do so. Defendants NARA and Ferriero are aware of the unlawfully alienated State Department records, and of Secretary Pompeo's failure to take appropriate action to recover those records, and yet Defendant Ferriero has also failed to act. Accordingly, Defendants NARA and Ferriero are in default of their mandatory obligations under the FRA.

51.     This failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.      declare that records created by State Department employees to document meetings between President Trump and President Putin, such as the Hamburg Meeting Records, are agency records subject to the FRA;

2.      declare that President Trump's seizure of such meeting records, including the Hamburg Meeting Records, constitutes an unlawful alienation of federal records in violation of the FRA;

3.      declare that Defendants have violated their respective duties under the FRA and APA;

4.      order Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Attorney General for enforcement of the FRA and recovery of unlawfully alienated State Department meeting records, such as the Hamburg Meeting Records;

5.      grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

6.      grant Plaintiffs any other relief this Court deems appropriate.

Dated: June 18, 2019                    Respectfully submitted,

                                        */s/ Nitin Shah*

                                        Javier Guzman (D.C. Bar No. 462679)
                                        Nitin Shah (D.C. Bar No. 156035)
                                        Benjamin Seel (D.C. Bar No. 1035286)
                                        **DEMOCRACY FORWARD FOUNDATION**
                                        P.O. Box 34553
                                        Washington, D.C. 200043
                                        (202) 448-9090
                                        jguzman@democracyforward.org
                                        nshah@democracyforward.org
                                        bseel@democracyforward.org


                                        John E. Bies (D.C. Bar No. 483730)
                                        Daniel A. McGrath (DC Bar No. 1531723)
                                        **AMERICAN OVERSIGHT**
                                        1030 15th Street NW, B255
                                        Washington, D.C. 20005
                                        (202) 869-5246
                                        john.bies@americanoversight.org
                                        daniel.mcgrath@americanoversight.org

                                        *Counsel for Plaintiffs*