**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN OVERSIGHT et al.,

                Plaintiffs,

     v.

U.S. DEPARTMENT OF STATE et al.,

                Defendants.

No. 1:19-cv-1773 TNM

**<u>DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

    I.     PLAINTIFFS' § 706(1) CLAIM CANNOT WITHSTAND
          DEFENDANTS' MOTION TO DISMISS ................................................ 2

        A.    Plaintiffs Fail To Assert Facts That Could Plausibly Give Rise
            To An Inference That The Secretary Failed To Take Action
            Required Under § 3106(a) ............................................................. 2

            1.    Plaintiffs' Sparse Factual Assertions Fail To Support
                  an Inference that the Interpreter's Notes Are Federal
                  Records .............................................................................. 4

            2.    Plaintiffs' Assertion that the President Took Possession
                  of Notes Created at the President's Diplomatic Meeting
                  Is Insufficient To Support the Inference that Taking the
                  Notes Was Unlawful ......................................................... 11

            3.    Plaintiffs' Factual Assertions Fail To Support an
                  Inference that the Secretary Knows or Has Reason To
                  Believe the President Unlawfully Took Possession of
                  Federal Records ................................................................ 14

        B.    Plaintiffs Fail To Assert Facts That Could Plausibly Give Rise
            To An Inference That the Archivist Failed To Take Action
            Required Under § 3106(b) ............................................................ 19

    II.    PLAINTIFFS' § 706(2)(A) CLAIM CANNOT WITHSTAND
          DEFENDANTS' MOTION TO DISMISS ................................................ 20

CONCLUSION .............................................................................................. 21

# **TABLE OF AUTHORITIES**

## **Cases**

*Amador Cty. v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011) ...................................................20

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 351 F. Supp. 3d 16 (D.D.C. 2018) ..21

*\*Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282 (D.C. Cir. 1991) ................13, 18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................2, 3, 4, 7, 8

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ........................7, 8

*Baz v. U.S. Dep't of Homeland Sec.*, No. 1:18-CV-01013 (CJN),
    2019 WL 5102827 (D.D.C. Oct. 11, 2019) ...........................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................3, 4, 5, 7, 8

*Bellinger v. Bowser*, No. CV 17-2124 (TJK),
    2018 WL 4705808 (D.D.C. Sept. 30, 2018) .........................................................8

*Bryant v. Taylor*, 244 F. Supp. 3d 209 (D.D.C. 2017) .......................................................8

*Competitive Enter. Inst. v. U.S. Envt'l. Prot. Agency* ("*CEI*"),
    67 F. Supp. 3d 23 (D.D.C. 2014) ......................................................................8-9

*\*CREW v. Pruitt*, 319 F. Supp. 3d 252 (D.D.C. 2018) ...............................................17, 18

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ........................................13

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ..................16

*Gerber Prod. Co. v. Perdue*, 254 F. Supp. 3d 74 (D.D.C. 2017) ....................................21

*In re Grant*, 635 F.3d 1227 (D.C. Cir. 2011) ...................................................................18

*Judicial Watch, Inc. v. Kerry*, 844 F.3d 952 (D.C. Cir. 2016) .........................................18

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013) .......................13

*Moore v. U.S. Dep't of State*, 551 F. Supp. 3d 76 (D.D.C. 2019) ....................................8

*Mozilla Corp. v. Fed. Commc'ns Comm'n*, No. 18-1051,
    2019 WL 4777860 (D.C. Cir. Oct. 1, 2019) .......................................................11

*Patrick v. Dist. of Columbia*, 179 F. Supp. 3d 82 (D.D.C. 2016) .......................................5

\*Price v. U.S. Dep't of Justice,
No. 18-cv-1339 (CRC), 2019 WL 2526439 (D.D.C. June 19, 2019) ............ 17-19

*Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 33 F. Supp. 3d 14 (D.D.C. 2014) .....5

*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) ...................................................7, 8

*Weise v. Jenkins*, 796 F. Supp. 2d 188 (D.D.C. 2011) .......................................................6

## Statutes

5 U.S.C. § 706 ..............................................................................................................2, 20, 21

Federal Records Act ("FRA"),
44 U.S.C. Chapters 21, 29, 31, and 33........................................................ *passim*

44 U.S.C. § 2115 ...............................................................................................................17, 18

Presidential Records Act of 1978 ("PRA"), 44 U.S.C. §§ 2201–2209 .............................12

44 U.S.C. § 2201 ...............................................................................................................12, 17

44 U.S.C. § 3106 ........................................................................................................ *passim*

44 U.S.C. § 3301 .........................................................................................................6, 10, 13

## Regulations

36 C.F.R. § 1222.12 ...................................................................................................... 9-11

# **INTRODUCTION**

Plaintiffs persist in their request that the Court compel both the Secretary of State (the "Secretary"), and the Archivist of the United States (the "Archivist"), to initiate an action against the President, through the Attorney General, to recover an interpreter's written "notes," made while serving as the President's language interpreter in his July 2017 meeting with Russian Federation President Vladimir Putin ("Mr. Putin"). According to Plaintiffs' Complaint, the President took the notes from the interpreter after the meeting. Plaintiffs argue that assertion, together with an assumption that everything in their Complaint is true, suffices to state a claim that the President violated the Federal Records Act ("FRA"), and that the Secretary and Archivist were obligated to take corrective action as a result. Plaintiffs are wrong.

Contrary to Plaintiffs' theory, the Rule 12(b)(6) standard of review cannot disguise the lack of factual support for their claims. Even at the pleading stage, the Court must reject conclusory characterizations, particularly when they merely parrot the elements of a statutory violation. Factual assertions are also insufficient when they omit the details required to support the particular claim that a plaintiff seeks to allege. And where facts give rise to an obvious alternative explanation that would not involve unlawful conduct, they defeat the plausibility of a claimed violation.

Applying these established principles, Plaintiffs' Complaint is deficient, and the claims therein should be dismissed. Plaintiffs' allegation—foundational to their Complaint—that the interpreter's notes "documented" the President's meeting, and thus are federal records, is conclusory—a deficiency that is fatal to their claims, particularly given the obvious alternative explanation that the notes are not federal records at all, but are simply unstructured jottings that the interpreter used as a memory aid while engaged in the demanding task of interpreting. Because this explanation is eminently plausible—indeed, more plausible than Plaintiffs' unsupported

conclusion that the notes are federal records—no inference that the President violated the FRA is justified.

Moreover, Plaintiffs' Complaint omits entirely any factual assertions supporting an inference that either the Secretary or the Archivist know or have reason to believe that the notes were federal records, or that the President's alleged taking possession of the notes was unlawful under the FRA. Instead, the Secretary and Archivist might well believe that the President's alleged taking possession of an interpreter's notes, made during the President's diplomatic meeting, was entirely lawful, and even that such notes, when in the President's custody, properly qualify as Presidential rather than federal records. Absent knowledge or reason to believe the President violated the FRA, no obligation on the part of the Secretary or Archivist under 44 U.S.C. § 3106 could have been triggered, and Plaintiffs' claims necessarily fail. Although Plaintiffs struggle in their opposition brief to overcome the sparse nature of their assertions, they fail to do so. As a result, their claims should be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' § 706(1) CLAIM CANNOT WITHSTAND DEFENDANTS' MOTION TO DISMISS

### A.   Plaintiffs Fail To Assert Facts That Could Plausibly Give Rise To An Inference That The Secretary Failed To Take Action Required Under § 3106(a)

As explained in Defendants' opening brief, the factual assertions in Plaintiffs' Complaint are insufficient to plausibly show that any obligation of the Secretary under 44 U.S.C. § 3106(a) has been triggered. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). In order to state a claim under 5 U.S.C. § 706(1) based on the Secretary's alleged failure to take action required by § 3106(a), the factual assertions in Plaintiffs' Complaint would have to support the inference that the Secretary "knows or has reason to believe" that "[federal] records" were "unlawfully removed from" the agency, 44 U.S.C. § 3106(a). But Plaintiffs fail to provide adequate factual support to infer (1) that

2

the "notes" of a State Department interpreter, created in the course of providing interpretation services for the President in a July 7, 2017 meeting with Mr. Putin, qualify as "federal records" within the meaning of the FRA; (2) that the President's alleged taking of those notes was unlawful; or (3) that the Secretary knows or has reason to believe that the President violated the FRA when he took the notes. *See* Def. Mem. [ECF 9] at 13-22.

In opposing dismissal, Plaintiffs heavily rely on the argument that, no matter how unlikely—and indeed speculative—the facts pleaded in their Complaint may appear, the Court must take them at face value at this stage of the case. However, the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal* make clear that, even under the Rule 12(b)(6) standard of review, no assumption of truth is required for "bare assertions" that are "conclusory" in nature. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). In *Iqbal*, the Court thus held that no presumption was warranted for the plaintiff's conclusory assertions that the Attorney General was a "principal architect" of an alleged discriminatory confinement policy, and that the FBI Director was "'instrumental' in adopting and executing" the alleged policy. *Id.* at 680-81. The Court emphasized, moreover, that a court should consider what facts would be needed to support a plaintiff's specific claim in order to determine whether essential facts are missing. *Id.* at 683. The Court thus proceeded to hold that, even assuming other assertions in the plaintiff's complaint were true, the complaint omitted facts essential to establish the elements of the plaintiff's claim—namely, "facts plausibly showing that petitioners purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin." *Id.* at 682. Finally, the Court in *Iqbal* made clear that factual assertions are insufficient to support an allegation of wrongdoing by the

defendant when the same factual assertions are "compatible with" or even "more likely explained by" lawful behavior. *See id.* at 680 (describing the Court's conclusion in *Twombly* that the plaintiff's "well-pleaded fact of parallel conduct" "did not plausibly suggest an illicit accord" because that factual assertion was "not only compatible with, but indeed, was more likely explained by, lawful, unchoreographed free-market behavior").

Here, all three deficiencies that the Court in *Iqbal* identified—conclusory allegations, omissions of facts essential to Plaintiffs' claim, and equally if not more likely lawful explanations for the conduct that Plaintiffs allege was unlawful—are present in full force and prevent Plaintiffs from plausibly showing any of the three elements necessary to claim that the Secretary was required to take action pursuant to § 3106(a).

> **1.    Plaintiffs' Sparse Factual Assertions Fail To Support an Inference that the Interpreter's Notes Are Federal Records**

The identification of "federal records" within the meaning of the FRA is an essential element of Plaintiffs' legal claim. Yet Plaintiffs' Complaint relies on conclusory allegations that are not even set forth in full sentences, but are embedded as descriptive clauses in sentences on other topics, for the notion that the interpreter's notes at issue here qualify as "federal records." Specifically, Plaintiffs assert that "[o]n at least one occasion, . . . President Trump took possession of written notes *documenting the meeting* . . .  from the State Department official who created them," *see* Compl. ¶ 25 (emphasis added), and that "the official who created the records *documenting the Hamburg Meeting Records*" [*sic*] was a State Department employee," *see id.* ¶ 28 (emphasis added).

Plaintiffs' mere attachment of the phrase "documenting the meeting" to the word "notes" is the epitome of a conclusory assertion and, as such, is accorded no presumption of truth. Moreover, in arguing that the Court must assume that the notes "documented" the President's

meeting, and are thus federal records, just because the Complaint says so, Plaintiffs misunderstand the difference between factual assertions and legal conclusions. Plaintiffs' unsupported characterization of the notes in a manner that seeks to bring them within the statutory definition of "federal records" is nothing but a "legal conclusion . . . couched as [a] factual allegation[]." *See Twombly*, 550 U.S. at 555. Courts have regularly rejected such assertions as insufficient. *E.g., Patrick v. Dist. of Columbia*, 179 F. Supp. 3d 82, 87–88 (D.D.C. 2016) (rejecting assertion that the District had a policy, practice, and custom authorizing police officers to execute search warrants in a manner that violates the Fourth Amendment, and that officers had acted pursuant to that policy, because the plaintiffs failed to provide facts supporting the existence of such a policy); *Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 33 F. Supp. 3d 14, 20–21 (D.D.C. 2014) (rejecting allegation that defendants "authorized or ratified" a boycott or "acted in concert" as conclusory when it simply mirrored what the plaintiff's legal claim would require with no supporting factual detail).

Plaintiffs simply allege that the notes document the meeting—making the legal conclusion that the notes are federal records—but do not assert facts that show the notes document the meeting.[1] The pertinent asserted facts consist only of the following: that the notes were created by a State Department employee during a meeting while the employee was serving as the President's interpreter, and that the President took the notes after the meeting. *See* Compl. ¶¶ 25, 28. The assertion that a State Department interpreter created the notes may suffice to satisfy the first requirement for a federal record—that it be "made or received by a Federal agency under Federal

---

[1] Tellingly, Plaintiffs argue in their opposition brief that they "have plausibly alleged that the Hamburg Meeting Records documented the July 7, 2017 meeting and accordingly are subject to the FRA," while pointing only to the paragraphs of their Complaint that include the phrase "documenting the meeting." Pl. Opp. at 11-12. Far from plausible, the conclusory nature of their allegation could not be clearer.

law or in connection with the transaction of public business." 44 U.S.C. § 3301(a)(1)(A). However, Plaintiffs' asserted facts do not plausibly show the second requirement for a federal record—that it is "preserved or appropriate for preservation by that agency as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them." *See id.*

Plaintiffs argue that Defendants' opening brief in support of their motion to dismiss engaged in "factual speculation" and "hypothesizing" that, they contend, is inappropriate at this stage of the case. Pl. Opp. [ECF 11] at 11. However, as discussed above, consideration of factual omissions and of lawful alternative explanations is a standard and necessary exercise when evaluating the sufficiency of a complaint pursuant to Rule 12(b)(6). Defendants have thus highlighted the absence from Plaintiffs' Complaint of any factual assertions that might have supported the inference that the interpreter's notes are "appropriate for preservation," so as to bring them within the FRA's definition of federal records. For example, Plaintiffs fail to include in their Complaint any factual support for the notion that interpreters generally "document" the meetings at which they serve as interpreters, or that they generally preserve or circulate any notes they make while interpreting. *See* Def. Mem. at 14. Such facts might have supported an inference that the notes at issue here documented the President's July 7, 2017 meeting, but, as Plaintiffs evidently concede, they have no good faith basis to make that assertion because nothing in the description of a State Department interpreter's role includes any suggestion that interpreters document the substance of meetings at the same time they are engaging in real-time interpretation. The situation here is thus similar to that in *Weise v. Jenkins*, 796 F. Supp. 2d 188 (D.D.C. 2011), where the court pointed to the absence of any provision in the Presidential Advance Manual that would have required the plaintiffs' ejection from the President's speech as undermining the plausibility of the

plaintiff's claim that there was an illegal nationwide policy of ejecting protesters. *See id.* at 199-200.

Moreover, the more likely inference to be drawn from the facts asserted by Plaintiffs, limited as they are, is that the interpreter's notes are not "federal records" within the meaning of the FRA but instead merely served to aid the interpreter's short-term memory while engaging in the act of interpreting from one language to another. *See* Def. Mem. at 15. After all, the interpreter's job at the July 7, 2017 meeting was not to take notes about the substance of the meeting or otherwise memorialize the substance of the meeting on behalf of the State Department, but was instead to provide real-time "translation services," Pl. Opp. at 16, to the President during the meeting. The assertion that the President took the notes, with nothing more, is also insufficient to draw the inference that the notes documented the President's meeting. Plaintiffs do not assert that the President reviewed or evaluated the notes before he took them, or that he had any specific concern regarding the notes' content. The President could plausibly have taken the notes out of an abundance of caution, pursuant to a general interest in preserving the meeting's confidentiality, rather than due to any specific concern about the contents of the actual notes. As in both *Twombly* and *Iqbal*, these "obvious alternative explanations" for the same facts that Plaintiffs assert, under which the notes are not federal records, defeats the plausibility of Plaintiffs' claims. *See Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.

Plaintiffs attempt to refute the significance of this alternative by citing language in *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), to the effect that, out of "two alternative explanations," the Court must assume Plaintiffs' version is correct at the motion to dismiss stage. Pl. Opp. at 11. But the D.C. Circuit in *Banneker* simply quoted that language from a Ninth Circuit case and did not apply any such rule in the case before it. *See Banneker*

*Ventures, LLC*, 798 F.3d at 1129 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011)). The idea expressed in *Starr* and quoted in *Banneker* does not reflect the law as set forth in *Twombly* and *Iqbal*, or as followed in this Circuit, particularly where there are so few underlying factual assertions to begin with. *See Iqbal*, 556 U.S. at 678 (asserted factual content must be more than "merely consistent with a defendant's liability"); *Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level"); *accord Moore v. U.S. Dep't of State*, 551 F. Supp. 3d 76, 87 (D.D.C. 2019) (recognizing that, under *Twombly* and *Iqbal*, a complaint's factual assertions must cross the line "between possibility and plausibility"). Rather, as the Supreme Court and other courts in this Circuit have recognized, an "obvious alternative explanation" for a plaintiff's asserted facts, which does not involve conduct in violation of the law, renders the plaintiff's claimed violation implausible. *See Iqbal*, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." (quoting *Twombl*y, 550 U.S. at 567)).[2]

Plaintiffs also seek to rely on *Competitive Enter. Inst. v. U.S. Envtl. Prot. Agency* ("*CEI*"), 67 F. Supp. 3d 23 (D.D.C. 2014), Pl. Opp. at 11, but in that case, the plausibility of the plaintiff's claim of an unlawful removal of federal records derived from its factual assertion that over 5000

---

[2] *See also, e.g., Baz v. U.S. Dep't of Homeland Sec.*, No. 1:18-CV-01013 (CJN), 2019 WL 5102827, at *7 (D.D.C. Oct. 11, 2019) (concluding that the plaintiff's assertion that he was on the No-Fly List was an implausible inference when his visa revocation was a lawful "obvious alternative explanation" for the same treatment that he described); *Bellinger v. Bowser*, No. CV 17-2124 (TJK), 2018 WL 4705808, at *10 (D.D.C. Sept. 30, 2018) (concluding that the plaintiff's assertion that a particular public library was subjected to intentional discrimination was an implausible inference when the asserted facts supported "so many possible explanations" that did not involve illegal discrimination); *Bryant v. Taylor*, 244 F. Supp. 3d 209, 212–13 (D.D.C. 2017) (rejecting plausibility of claimed discrimination when a simple misunderstanding provided an obvious alternative explanation for the defendant's asserted lies).

agency text messages sent or received by EPA Administrators had been removed. *See CEI*, 67 F. Supp. 3d at 34 ("[I]t is implausible that EPA Administrators would not have suspected the destruction of any federal records with the removal of over 5,000 Agency text messages."). As discussed above, Plaintiffs here allege no comparable facts suggesting that the notes in question are federal records. The court's determination in *CEI* that it would not entertain, at the pleading stage, the government's suggestion that employees might have "preserved . . . text message[s] in another format," *id.*, has no bearing on this case because Defendants have made no similar suggestion here.[3] Instead, Defendants have simply pointed out that Plaintiffs' factual assertions are insufficient to infer that the notes qualify as federal records in the first place.

Defendants' opening brief also cited a regulation promulgated by the National Archives and Records Administration ("NARA"), 36 C.F.R. § 1222.12(c), which sets forth the circumstances when "[w]orking files, such as preliminary drafts and rough notes, and other similar materials," fall within the FRA's definition of "federal records." Def. Mem. at 15. The provision is significant because even under Plaintiffs' theory, the document at issue at most consists of "notes," not a final summary or transcript of the President's meeting. Compl. ¶ 25. Plaintiffs seem to suggest that § 1222.12(c) could only apply to "notes" after a "final product" is created, which "itself constitutes a federal record." Pl. Opp. at 13. But the regulatory text contains no such limitation. *See* 36 C.F.R. § 1222.12(c). Rather, the provision expressly contemplates that some working files, drafts, or notes will not relate to "agency business" or "the agency's formulation and execution of basic policies, decisions, actions, or responsibilities" at all. *See id.*[4] Such material

---

[3] The government's suggestion in *CEI* was not a proposed obvious alternative explanation for the facts the plaintiffs there had alleged; rather, it was a suggestion of possible additional facts that could moot the plaintiffs' claims in that case.

[4] Plaintiffs' view of the provision would essentially equate notes and other "working files" to potential "copies," where the only issue would be whether they are sufficiently unique or were

might include, for example, an agency employee's to-do list, made solely to help the employee organize and track work-related tasks for the employee's own benefit; notes made at a staff meeting solely for the employee's own use; or—as could well be the case here—an interpreter's jotted-down scribbles for the sole purpose of recalling specific words or phrases while interpreting from one language to another. Such material would not result in a "final product" that would be a federal record, yet § 12222.12(c) makes clear that the material itself would also not qualify as a federal record.

Plaintiffs also contend that the NARA regulation is irrelevant because, regardless of whether the interpreter's notes would qualify as federal records under the regulation, the notes have "informational value" sufficient to meet the FRA's statutory definition. Pl. Opp. at 13. However, the import of § 1222.12(c)(1) is that an individual employee's "rough notes" are not deemed to have "informational value," sufficient to accord them federal record status, based solely on their content; instead, notes would be of value only if they played some role in agency activities, rather than merely reflecting an individual employee's scribblings for the employee's own use. Thus, it is not enough for notes to "contain unique information," *see* 36 C.F.R. § 1222.12(c)(2); rather, they must also be *used* "for official purposes," *id.* § 1222.12(c)(1), in order to have "informational value" or to qualify as "evidence" of government activities under the FRA. The regulation recognizes a distinction between an agency employee's notes that are used only by the employee as a self-help tool to carry out the employee's work, and notes that become part of the activities of the agency itself, and clarifies that federal records only include the latter, and only after the notes are actually used.

---

used in a sufficiently independent way that they are not mere duplicates of the putative "final product." *See* Pl. Opp. at 13. But both the NARA regulation and the FRA's statutory definition of "records" address copies separately. *See* 44 U.S.C. § 3301(a)(1)(B)(ii); 36 C.F.R. § 1222.12(d).

The NARA provision reflects NARA's reasonable interpretation of how the FRA's statutory definition draws the line between notes and other "working files" that would qualify as federal records and those that would not. *Mozilla Corp. v. Fed. Commc'ns Comm'n*, No. 18-1051, 2019 WL 4777860, at *3–4 (D.C. Cir. Oct. 1, 2019) (explaining *Chevron* framework, governing a court's "defer[ence] to an agency's construction of an ambiguous provision in a statute that it administers if that construction is reasonable"). Plaintiffs' failure to assert that the notes at issue were "circulated or made available" to other agency employees "for official purposes," Def. Mem. at 14-15 (quoting 36 C.F.R. § 1222.12(c)(1)), so as to qualify the interpreter's notes as federal records under NARA's regulation, is thus another telling omission that contributes to the implausibility of any inference that the notes are federal records.[5]

### 2. Plaintiffs' Assertion that the President Took Possession of Notes Created at the President's Diplomatic Meeting Is Insufficient To Support the Inference that Taking the Notes Was Unlawful

Plaintiffs' allegation that the President's alleged taking of the interpreter's notes was unlawful depends entirely on their allegation that the notes qualify as federal records. *See* Pl. Opp. at 15 (arguing that the President did not follow the records disposal requirements of the FRA when he allegedly took the interpreter's notes). But because, as discussed above, Plaintiffs' factual

---

[5] Plaintiffs' speculation that an agency could avoid creating federal records by removing or destroying notes or drafts before they are ever circulated makes no sense. *See* Pl. Opp. at 13-15 (suggesting that the President, by "swiftly alienating" material before it is circulated, could frustrate Congress's intent in enacting the FRA). After all, if an agency seeks to create a "final product" (as Plaintiffs put it), the loss of preliminary rough notes is unlikely to prevent it from doing so. Even if rough notes by a particular employee were deemed crucial, the loss of an initial set of notes would likely simply require the employee to recreate the material—if necessary, from scratch and based only on the employee's memory. Anyone who has inadvertently failed to save or otherwise lost a word processing draft and had to re-write it is familiar with the process. Here, the President's alleged action in taking the notes—the only action that Plaintiffs identify as implicating § 3106—could not by itself have prevented the agency from drawing on its employees' recollections in order to create some final documentary product, if there were reason to do so.

assertions do not support the latter conclusion, they also do not support the former.

Moreover, as explained in Defendants' opening brief, Plaintiffs' factual assertions that it was the President who took the notes, and that the notes related to the President's meeting with Mr. Putin, further undermine, rather than support, any inference that the President acted unlawfully in taking the notes. Def. Mem. at 16-17. Here again, there is an obvious alternative explanation, based on the same facts that Plaintiffs' allege, that does not require an inference that the President acted unlawfully. Namely, the President could well have been exercising his authority to preserve the confidentiality of his meeting with a foreign leader. There is nothing unlawful about the President taking possession of the interpreter's notes for that purpose even though, as discussed above, the most plausible understanding of the notes is that they did not "document" the meeting but instead were simply used by the interpreter for the purpose of interpretation. The President's alleged concern with the notes merely highlights the undisputed fact that, even though the interpreter was a State Department employee, his job in the meeting was to assist the President. Indeed, any records that do actually document the President's meeting with a foreign leader, and are "created or received by the President," would in many circumstances qualify as Presidential records under the Presidential Record Act ("PRA")'s definition in 44 U.S.C. § 2201(2), rather than federal records within the meaning of the FRA.[6] As such, Plaintiffs' factual assertions plausibly support the inference that, when the President allegedly took possession of the interpreter's notes, the notes properly became Presidential records. There would be nothing unlawful in the President's

---

[6] As discussed in Defendants' opening brief, the PRA and FRA are mutually exclusive. *See* Def. Mem. at 2-7. The PRA expressly excludes from its definition of "Presidential records" those records that are "federal records" under the FRA. 44 U.S.C. § 2201(2)(B). At the same time, a document created by an agency employee can become a Presidential record if "received by the President . . . in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." *Id.* § 2201(2).

taking possession of such records. *See Armstrong v. Bush* ("*Armstrong I*"), 924 F.2d 282, 290 (D.C. Cir. 1991) (recognizing that the President has "virtually complete control" over the creation, management and disposal of Presidential records during his term in office).

Thus, even if Plaintiffs had adequately asserted that the notes contain evidence of government activity or otherwise had "informational value," there is no plausible inference that the notes are "appropriate for preservation by" the State Department, 44 U.S.C. § 3301(a)(1)(A), rather than by the President.[7] As discussed in Defendants' opening brief, the D.C. Circuit has recognized, for example, that even though White House visitor logs were created by the Secret Service, logs of visitors to the President were not agency records within the meaning of FOIA. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013). Plaintiffs fail to acknowledge, much less refute, the court's reasoning in that case.

Instead, Plaintiffs attempt to ridicule the notion that "matters of foreign policy are beyond the reach of the FRA," Pl. Opp. at 16, but their mischaracterization of Defendants' argument ignores that the President's meeting with Mr. Putin was not simply a "matter of foreign policy"; instead, it was a meeting conducted by the President himself. As such, he has a strong claim to control both substantive and logistical aspects of the meeting, pursuant to his power "to speak and bargain effectively with other nations," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 382 (2000), including the notes of the interpreter assisting him. The cases cited by Plaintiffs concerning the recovery of records of former Secretaries of State, *see* Pl. Opp. at 16, are inapposite. Plaintiffs' further argument that the State Department had an obligation under the FRA to preserve the notes,

---

[7] Plaintiffs' opposition brief appears to suggest that preservation of the interpreter's notes by the State Department would ensure "relevant officials within the Administration" would have access to the notes. *See* Pl. Opp. at 17. However, Plaintiffs' Complaint contains no factual assertions supporting that argument, nor does it assert that "relevant officials" attempted but were unable to access the notes after the President allegedly took possession of them.

and that the FRA does not permit the President to bypass its records preservation requirements, again assumes that the notes qualify as federal records—but that inference is exactly what Plaintiffs' assertions fail to support, and it also reflects the untenable assumption that notes made during the President's diplomatic meeting could not properly have become Presidential records even when allegedly taken by the President.

### 3. Plaintiffs' Factual Assertions Fail To Support an Inference that the Secretary Knows or Has Reason To Believe the President Unlawfully Took Possession of Federal Records

Plaintiffs' claims also cannot withstand Defendants' motion because their Complaint fails to include *any* assertion—conclusory or otherwise—of facts that could support the inferences that the Secretary knows or has reason to believe that the notes are federal records, nor that he knows or has reason to believe that the President's alleged taking of the notes was unlawful.

As discussed above, Plaintiffs fail to assert any factual details suggesting that any "notes" of a language interpreter categorically qualify as federal records, so they cannot rely on any such general rule to infer the Secretary's knowledge. The only direct assertion in Plaintiffs' Complaint concerning the Secretary's knowledge is that former-Secretary Tillerson "was reportedly present at the July 7, 2017 meeting in which the seized records were created." Compl. ¶ 30. Based on that assertion, Plaintiffs infer that former Secretary Tillerson "would have had direct knowledge of the events giving rise to the FRA violation." *See id.* However, no such inference is supported by the former Secretary's mere presence at a meeting, particularly when, by Plaintiffs' own description, the President allegedly took the notes after the meeting was over. *See* Compl. ¶ 25 (asserting President took possession of notes "following" the July 7, 2017 meeting). Plaintiffs do not suggest, for example, that former Secretary Tillerson ever saw the interpreter's notes, or was able to read them, nor that he witnessed the President taking possession of the notes, nor that the President

communicated anything to Secretary Pompeo about the notes. Plaintiffs' assertion regarding former Secretary Tillerson's presence therefore fails to plausibly show that the current Secretary knows or has reason to believe that the interpreter's notes qualify as federal records.

Plaintiffs' Complaint also cites two letters sent by them to Secretary Pompeo. However, nothing in either letter could conceivably serve to inform the Secretary that the interpreter's notes qualify as a federal record. To the contrary, the American Oversight letter contains no description of the contents of the notes, and acknowledges that even the Plaintiff was uncertain regarding whether a FRA violation might have occurred. *See* Compl. ex.A, at 1 (indicating that the President's "reported removal of a State Department interpreter's notes *may* violate the [FRA]" (emphasis added)). Democracy Forward's letter first asserts in conclusory fashion that the notes "constitute federal records within the meaning of the FRA," Compl. ex.B, at 1, and then makes the general statement that records created by agency employees "that catalogue important and contemporaneous details of American diplomacy" would "qualify as federal records," *id.* at 3, but it fails to assert—just as Plaintiffs' Complaint fails to assert here—that the interpreter's notes at issue catalogued any such details. The Democracy Forward letter also cites a newspaper article by Greg Miller, as well as a letter sent to Secretary Pompeo by Senator Menendez, but again, neither document purports to describe the contents of the notes. The Miller article contains no description whatsoever of the notes.[8] Senator Menendez's letter simply asks the Secretary to preserve "all

---

[8] *See* Greg Miller, Trump has concealed details of his face-to-face encounters with Putin from senior officials in administration, *Washington Post*, Jan. 13, 2019, *available at* https://www.washingtonpost.com/world/national-security/trump-has-concealed-details-of-his-face-to-face-encounters-with-putin-from-senior-officials-in-administration/2019/01/12/65f6686c-1434-11e9-b6ad-9cfd62dbb0a8_story.html. The other article cited by Plaintiffs in their opposition brief also contains no information regarding the contents of the notes. *See* Peter Baker, Trump and Putin Have Met Five Times. What Was Said Is a Mystery, *N.Y. Times*, Jan. 15, 2019, *available at* https://www.nytimes.com/2019/01/15/us/politics/trump-putin-meetings.html.

records related to" a different meeting, scheduled to take place in Osaka, regardless of whether they would qualify as federal records under the FRA.[9] Plaintiffs thus identify no assertion in their Complaint that supports the notion that the Secretary knows or has reason to believe that the interpreter's notes qualify as federal records.

Nor do Plaintiffs identify any assertion in their Complaint suggesting that the Secretary knows or has reason to believe that the President's alleged taking of the interpreter's notes was unlawful. Unless the Secretary knew that the interpreter's notes were federal records, he would have no reason to suspect that the President's alleged taking of the notes was unlawful. Plaintiffs' failure to assert facts suggesting the former thus prevents them from showing the latter. Although Plaintiffs rely on their own letters and those of Senator Menendez, as well as media reports as evidence of the Secretary's knowledge of unlawful action, Pl. Opp. at 20, only the Democracy Forward letter alleges that the President violated the FRA by taking the interpreter's notes, and it does so only in conclusory fashion. This single letter is plainly insufficient to trigger any obligation of the Secretary to take action against the President under § 3106(a).

The insufficiency of Plaintiffs' assertions is particularly stark here because the Secretary

---

[9] *See* Letter from Sen. Robert Menendez to Secretary Mike Pompeo (June 28, 2019), *available at* https://www.menendez.senate.gov/news-and-events/press/menendez-reed-seekproof-that-trump-kept-records-of-his-meetings-with-putin. Plaintiffs' opposition brief cites two additional letters from Senator Menendez. However, even if the Court is willing to take judicial notice of these newly-cited letters, *see EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997), neither letter purports to describe the contents of any interpreter's notes, nor does either letter characterize such notes as federal records; rather, the letters simply ask the President and Secretary Pompeo either to preserve or to provide copies of such material, whether they qualify as federal records or not. *See* Letter from Sens. Robert Menendez & Jack Reed to President Donald J. Trump (Jan. 16, 2019), *available at* https://www.foreign.senate.gov/imo/media/doc/01-16-19%20RM%20Reed%20Letter%20to%20Trump%20re%20Putin%20Notes.pdf; Letter from Sens. Robert Menendez & Jeanne Shaheen to Secretary Mike Pompeo (Aug. 24, 2018), *available at* https://www.foreign.senate.gov/imo/media/doc/08-24-18%20RM%20Shaheen%20letter%20re%20Helsinki%20notes.pdf.

could reasonably believe that any notes created during the President's meeting with a foreign leader and then taken by the President would qualify as Presidential records, and that there was nothing unlawful about the President's alleged action, even if it had occurred. *See* 44 U.S.C. § 2201(2). The Secretary would surely require something more than Democracy Forward's letter before he could be deemed to know or have reason to believe that the President's alleged taking of notes concerning his own meeting with a foreign leader was unlawful. Plaintiffs' Complaint fails to identify anything more, and thus fails to plausibly show that the Secretary knows or has reason to believe an FRA violation occurred when the President allegedly took possession of the interpreter's notes.

Far from supporting their claim, Plaintiffs' assertions make clear the wisdom of the courts' reasoning in *Price v. U.S. Dep't of Justice*, No. 18-cv-1339 (CRC), 2019 WL 2526439 (D.D.C. June 19, 2019), and *CREW v. Pruitt*, 319 F. Supp. 3d 252 (D.D.C. 2018), requiring an agency finding that a removal of federal records in violation of the FRA has occurred before imposing on the Secretary any obligation to take action under § 3106(a) or under a similar provision in 44 U.S.C. § 2115. *Price*, 2019 WL 2526439, at *14; *Pruitt*, 319 F. Supp. 3d at 261. Although Plaintiffs attempt to distinguish *Price*, Pl. Opp. at 21, the situation here is quite similar because, as in *Price*, Plaintiffs largely rely on their own notice to the Secretary to support their allegation of knowledge. *Cf. Price*, 2019 WL 2526439, at *14. Plaintiffs also point out that the court in *Pruitt* was addressing different statutory language in § 2115. Pl. Opp. at 22. But the court in *Price* plainly acknowledged as much while explaining in detail its conclusion that, despite the different statutory language at issue, § 3106(a) should also be deemed to require a finding before the agency faces any obligations. *Price*, 2019 WL 2526439, at *12 (explaining that Congress could not have intended to impose a lower burden on a plaintiff seeking to invoke § 3106's obligation to initiate

17

judicial action than when merely seeking to invoke the obligation in § 2115 to notify the agency and provide recommendations, and concluding that, "[a]s it was with § 2115, so it should be with § 3106: '[t]he finding of a violation is . . . a condition precedent to the [agency head's and] Archivist's statutory obligation to act.'" (quoting *Pruitt*, 319 F. Supp. 3d at 261) (last alteration revised)). Even though *Price* is unpublished, its sound reasoning deserves careful consideration as persuasive authority. *See In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (recognizing that an unpublished opinion "may be considered persuasive authority").

Plaintiffs also cite *Judicial Watch v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016), for the notion that requiring an agency finding would "flip *Armstrong* on its head." Pl. Opp. at 20. But this suggestion is meritless. The court in *Judicial Watch* rejected a proposed interpretation of § 3106 that would allow an agency to "ignore its referral duty" once it undertook any initial review of an alleged FRA violation, pointing out that the statute identifies the referral to the Attorney General as the action required once the obligation has been triggered. *Judicial Watch*, 844 F.3d at 956. But as discussed in Defendants' opening brief, there was no dispute in *Judicial Watch* that the obligations of § 3106 *had* been triggered; instead, the fact that the agency had taken some action indicated its awareness that an FRA violated had occurred. *See Price*, 2019 WL 2526439, at *14 (recognizing that in *Judicial Watch*, "the very fact that the agency had taken *some steps* toward correcting for the removal of the records at issue . . . quite obviously functioned as an acknowledgement that those records *should* be in the agency's possession").

As the court in *Price* explained, in the absence of any such agency acknowledgement, the requirement of a finding is merely an objective way to determine whether the obligations of § 3106 are triggered—and some such method for doing so is necessary to prevent plaintiffs from using § 3106 as a means of circumventing *Armstrong*'s prohibition of actions seeking to directly enjoin

an agency official from improperly removing records, by requiring the court to engage in the very review of the agency official's conduct that *Armstrong* foreclosed. *See Price*, 2019 WL 2526439, at *13 (explaining that, absent a finding by the agency, the court would have to first "determine that a violation has occurred—which § 3106 does not mandate," and noting that the question of "whether an FRA violation has occurred in the first instance" is exactly what the Supreme Court has "said is unfit for judicial review"). Even if the Court does not require an express finding, it should recognize that, in the absence of facts plausibly showing that the interpreter's notes are federal records in the first place, let alone anything resembling an agency finding that federal records were unlawfully removed, Plaintiffs have failed to support an inference that the Secretary knew or had reason to believe that the President's alleged actions constituted an FRA violation.

> **B.    Plaintiffs Fail To Assert Facts That Could Plausibly Give Rise To An Inference That The Archivist Failed To Take Action Required Under § 3106(b)**

As explained in Defendants' opening brief, the factual assertions in Plaintiffs' Complaint are also insufficient to sustain their claim against the Archivist. Indeed, two of the very same inferences—that the interpreter's notes qualify as "federal records" within the meaning of the FRA, and that the President removed the notes in violation of the FRA—would be needed to state a claim that the Archivist is obligated to "request the Attorney General to initiate" an action against the President when the Secretary failed to do so within a reasonable period of time. *See* 44 U.S.C. § 3106(b). Plaintiffs thus rely on the same arguments they advanced to oppose dismissal of their claim against the Secretary, but those arguments fail for the same reasons explained above.

In addition, Plaintiffs' Complaint omits any assertion that the Archivist knows or has been notified by the Secretary that the President's taking possession of the interpreter's notes was an

unlawful removal of federal records, so as to trigger the Archivist's obligation in the first place.[10] Plaintiffs' opposition brief ignores any such requirement, apparently suggesting an interpretation of § 3106(b) that would impose obligations on the Archivist even when the Archivist is completely unaware of the FRA violation that he is supposed to try to remedy. But § 3106(b) refers back to § 3106(a), and the two provisions, read together, clearly and sensibly indicate that any obligation of the Archivist would only arise after he is notified by an agency head that an FRA violation is occurring or is about to occur. *See* 44 U.S.C. § 3106. Plaintiffs' claim against the Archivist under 5 U.S.C. § 706(1) therefore should also be dismissed.

## II.   PLAINTIFFS' § 706(2)(A) CLAIM CANNOT WITHSTAND DEFENDANTS' MOTION TO DISMISS

Although Plaintiffs' Complaint quotes language in § 706(2)(A), the claim Plaintiffs seek to bring under that provision is untenable where the only relevant factual assertion that Plaintiffs make is that the Secretary and Archivist failed to take action pursuant to § 3106. Almost by definition, a failure to take action, amenable to suit under § 706(1), cannot also be a "final agency action," subject to challenge under § 706(2)(A). Plaintiffs cite a single case to support their theory to the contrary, *Amador Cty. v. Salazar*, 640 F.3d 373, 383 (D.C. Cir. 2011), but that case did not recognize a failure to act as a final agency action. Rather, it relied on statutory language expressly indicating that an agency's failure to approve or disapprove a compact within a specified period "shall be considered" an approval. *See id.* at 375. Here, in contrast, nothing in § 3106 indicates that the Secretary's or Archivist's failure to take action under its provision would at some point amount to an agency action that could be "set aside" under § 706(2)(A).

---

[10] The Complaint does indicate that the Archivist was copied on Democracy Forward's letter to the Secretary. Compl. ex.B, at 1. However, the letter is insufficient to confer knowledge on the Archivist, for the same reasons explained above with respect to the Secretary.

Moreover, even if an affirmative decision not to act could qualify as a "final agency action" for purposes of § 706(2)(A), Plaintiffs assert no facts in their Complaint that plausibly show that either the Secretary or the Archivist made such an affirmative decision. Concluding that there was a "final agency action" in this circumstance therefore would allow any plaintiff to circumvent the APA's final agency action requirement for a claim under § 706(2)(A), as well as the strict requirements for a claim under § 706(1), merely by asserting that the agency did not do what plaintiffs contend it should have done—a tactic that has been soundly rejected in other cases. *See, e.g.*, *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 351 F. Supp. 3d 16, 26 (D.D.C. 2018) (rejecting plaintiffs' attempt to recast a claim under § 706(1) as a challenge to "final agency action" under § 706(2)(A)); *Gerber Prod. Co. v. Perdue*, 254 F. Supp. 3d 74, 84 (D.D.C. 2017) (rejecting plaintiff's "effort to transform federal inaction in factually dissimilar situations into final agency action")

Finally, even if the Secretary's or Archivist's lack of action pursuant to § 3106 could be deemed "final agency action," Plaintiffs fail to plausibly show that it is action that is arbitrary, capricious, or contrary law, for the same reasons discussed above. Rather, the Secretary's and Archivist's failure to initiate judicial action against the President to recover an interpreter's notes, made during the President's diplomatic meeting, is entirely reasonable. Plaintiffs' claim under § 706(2)(A) therefore should be dismissed.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, the Court should dismiss Plaintiffs' claims in their entirety, with prejudice.

Dated:  October 31, 2019                        Respectfully submitted,

                                                JOSEPH H. HUNT

Assistant Attorney General
MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ Kathryn L. Wyer*
KATHRYN L. WYER
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendants*